| | | |
|---|---|---|
| LINDSAY FLECK | : | |
| Plaintiff, | : | |
| v. | : | No. 10-5562 |
| | : | |
| WILMAC CORPORATION, WILMAC | : | |
| MEDICAL INSURANCE PLAN, | : | |
| ATTLEBORO ASSOCIATES, LTD., | : | |
| ATTLEBORO NURSING & | : | |
| REHABILITATION CENTER AND | : | |
| SUSAN MITCHELL | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R.C.P. 12(b)(6)

Defendants, by and through their counsel, Burns White, LLC, request this Honorable Court dismiss Counts I-VII of Plaintiff's Amended Complaint, dismiss Plaintiff's claim for physical and emotional damages and her claims for punitive damages pursuant to Fed. R. Civ. 12(b)(6).

## I.    FACTS

Plaintiff, Lindsay Fleck, filed a seven count Amended Complaint alleging, *inter alia*, that she was terminated from her employment at Attleboro Nursing & Rehabilitation Center as a result of a disability. A true and correct copy of her Amended Complaint is attached hereto as Exhibit "A."

She specifically alleges that she suffered a non-work injury prior to her employment with defendants in March 2006. (See Ex. A., ¶18). She further alleges that as a result of the injury that she had a disability as defined by the American With Disabilities Act (hereinafter "ADA") and the Americans with Disabilities Amendments Act and the Pennsylvania Human Relations Act

(hereinafter "PHRA"). (Id., ¶23). She claims that she had substantial impairment of the major life activities of walking and standing. (Id., at ¶ 24).

Fleck claims that in late August of 2008 that she received a disciplinary notice following an incident that occurred on August 15, 2008. (Ex. A, ¶29). Ms. Fleck does not allege that she suffered any pay loss, demotion or any other any adverse consequences following the incident nor was it a factor mentioned in her voluntarily termination. She further alleges that she could perform her job prior to her leave with reasonable accommodations. (Id., at ¶ 25). However, Plaintiff does not state what these alleged "reasonable accommodations" were (i.e., fewer hours, more breaks, etc).

Nevertheless, Fleck claims she notified her employer in early August 2008 that she would need time off for surgery to her ankle. (Id., at ¶28). Ms. Fleck was granted leave pursuant to the Family Medical Leave Act (hereinafter "FMLA") beginning on November 19, 2008. (Id., at ¶38). On February 5, 2009, she informed her supervisor that she could not return to her full time schedule at the expiration of her leave. Instead, she submitted a doctor's note that stated she could only work four hours per day. (Id., at ¶40). Therefore, by her own admission, Plaintiff could not return to her pre-FMLA position as a full-time physical therapist.

As a result, a letter was sent to Plaintiff notifying her that she had exhausted her 12 weeks of federal Family Medical Leave and "that was considered a voluntarily termination." (Id., at ¶52).

Plaintiff also makes specific allegations in her Amended Complaint against Susan Mitchell, the Human Resources Director at Attleboro. She alleges that Mitchell failed to submit

her STD claim, failed to supply correct salary information and failed to supply proper COBRA notices. (See Counts V-VII of Plaintiff's Amended Complaint).[1]

Also in her Amended Complaint, Plaintiff generally alleges as a result of the foregoing, she has suffered monetary and wage loss damages and physical and emotional damages, including loss of self-esteem and personal humiliation. Despite her vague allegations, Plaintiff has failed to state any set of facts that can support a claim to relief and therefore, her claims should be dismissed.

## II.   LEGAL STANDARD

In <u>Young v. Westfall</u>, 2007 WL 675182, 1 (M.D.Pa.,2007), the Court summarized the standard as follows:

> The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding." A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law." If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."(citations omitted)

Furthermore, the court must "accept as true all of the matters pleaded and all reasonable inferences that can be drawn from them, construing them in the light most favorable to the non-moving party." <u>Alifano v. Merck & Co., Inc.</u>, 175 F.Supp.2d 792, 794 (E.D.Pa.,2001). Additionally, the United States Supreme Court recognized that 'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" <u>Romero v. Allstate Insurance</u>, 2010 WL 4670172 (E.D.Pa. 2010).

---

[1] Plaintiff did not raise these specific allegations against Ms. Mitchell until after Defendants requested that Ms. Mitchell be dismissed as an individual defendant as the facts did not substantiate a claim against her. Furthermore, Defendants agreed to stipulate that Ms. Mitchell was acting within the course and scope of her employment at the time of the alleged incidents. Instead of accepting the stipulation, Plaintiff chose to expand the alleged liability against Ms. Mitchell.

## III. ARGUMENT

### A. Plaintiff's Counts For Retaliation And Interference With Her FMLA Rights Fail As The FMLA Does Not Require An Employer To Provide A Reasonable Accommodation At The Expiration Of The FMLA Period.

Plaintiff alleges that her employer violated the ADA, PHRA and FMLA rights by failing to provide her with a reasonable accommodation at the expiration of her FMLA period. However, by her own admission, Plaintiff's leave period expired on February 12, 2009 and she could not return to her full time job. Instead, her doctor **indefinitely** limited her to a four hour work day.[2] Despite that, Plaintiff claims that her employer should have permitted her to return to part-time employment as a "reasonable accommodation." However, the law does not require that an employer make a reasonable accommodation for an employee after the employee has fully exhausted her FMLA leave benefits, as the Plaintiff did here.

In Alifano v. Merck & Co., Inc., 175 F.Supp.2d 792, 795 (E.D.Pa.,2001), this Honorable Court noted:

> Unlike the Americans with Disabilities Act (ADA), the FMLA does not require an employer to reasonably accommodate an employee's serious health condition. *See:* 29 C.F.R. § 825.702(a) and 29 C.F.R. § 825.214(b). The regulations also make clear that if the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA. 29 C.F.R. § 825.214(b).

---

[2] Plaintiff pled that she "submitted a note from her doctor stating that she could increase her hours over a six-week span." However, she fails to attach the note in hopes to bolster her claim and avoid dismissal. In reality, Plaintiff provided the note attached hereto as Exhibit "B" which clearly shows that she could not return to her full duty job and that the restriction of four hours per day was for an indefinite period of time. Defendants are aware that submission of documents outside of the pleadings *can* convert a 12(b)(6) motion into a motion for summary judgment; however, Plaintiff's failure to attach the note to her Amended Complaint severely prejudices Defendants. Furthermore, in Wells v. Genesis Health Ventures, Inc., 2005 WL 3150259, 2 (E.D.Pa.,2005) the Court holds that:

> [A]n exception to the general rule is that a document integral to or explicitly relied upon in the **complaint may be considered** without converting the motion to dismiss pursuant to F.R. Civ. P. 12(b)(6) into one for summary judgment pursuant to F.R. Civ. P. 56. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997) (citations omitted); *see also In re Donald J. Trump Casino Sec. Litig.,* 7 F.3d 357, 368 n. 9 (3d Cir.1993) (holding that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document). (emphasis added).

In <u>Alfiano</u>, a former security investigator alleged interference with her FMLA rights following a diagnosis of fibromyalgia and chronic fatigue syndrome. As a result, Alfiano took a leave of absence. She eventually informed her employer that she could return to work, but with limited hours (no more than eight hours) and no travel. Unable to find a job that accommodated her medical restrictions, her employer deemed her to have abandoned her job and terminated her. The Court found that Alfiano suffered no injury. Further, the court held that "since Plaintiff could not return to work and **perform her job**, terminating her employment did not amount to any violation of the Plaintiff's FMLA rights and she has therefore failed to state a cognizable cause of action under the FMLA on this basis." <u>Id</u>., at 795-796 (emphasis added). In <u>Alfiano</u>, the plaintiff could return to a <u>full</u> eight hour schedule, but could not travel. Here, Fleck was only permitted by her doctor to work four hours per day.[3] Her employer had <u>no obligation</u> to accommodate Ms. Fleck's request under the FMLA since she could not perform her job.

Similarly in <u>Gibson v. Lafayette Manor</u>, 2007 WL 951473 (W.D. Pa. 2007), the Plaintiff was unable to return to her full time position at the end of her FMLA. Gibson argued that her employer should have provided her with a reasonable accommodation in the form of an extended leave. The Court relying on <u>Alfiano</u>, *supra*. noted:

> Gibson's argument completely misses the mark. It is clear that the FMLA, unlike the ADA, does not require an employer to reasonably accommodate an employee's serious health condition. Therefore, she cannot side-step the requirement of an adverse employment action simply by arguing that she could have returned to work with reasonable accommodation in the form of an extended leave. Because it is undisputed that Gibson was unable to return to work at the expiration of her FMLA leave...she did not suffer an adverse employment action. (citations omitted).

<u>Id</u>., at *19. Plaintiff will argue that she could return to work in some capacity and

---

[3] Plaintiff briefly alleges that she discussed a return to full duty work with her doctor and he eventually wrote her a note; however, there is no allegation that this note was given to her employer. In fact, by implication, it is clear that this proposal to return to full duty occurred only after her voluntarily termination. See Paragraphs 43 and 44.

therefore, Gibson does not apply. However, she was essentially requesting an extended leave of four hours per day for an <u>unlimited and uncertain time period</u>. Even under the stricter standard of the ADA, the employee must be able "perform his or her essential job functions in the near future." <u>Dogmanits v. Capital Blue Cross</u>, 413 F. Supp.2d 452, 460 (E.D..Pa. 2005). An open-ended accommodation is unreasonable. <u>Id</u>. It is clear that Ms. Fleck was unable to return to her job as her physician had not released her to full duty work. Furthermore, there is no indication when she would be released. Plaintiff cannot maintain a claim under the FMLA for either interference or retaliation. Plaintiff could not return to her pre-FMLA job. Defendants had no obligation to give her an alleged "reasonable accommodation" of part time employment since Plaintiff had fully exhausted her leave and had no assurance of when she could return to her full time employment.

Furthermore, any claim for retaliation is unfounded. Defendants did not have an opportunity to put her back into her pre-employment position because she was not medically qualified. Additionally, Plaintiff has failed to provide any evidence of negative feelings or encouragement to dissuade her from taking her FMLA. Although Plaintiff attempts to make the August 15, 2008 incident into a "motive" regarding her termination, she does not allege any negative result of that incident. Other than the disciplinary notice, Ms. Fleck suffered no consequences regarding the incident. Plaintiff suffered no demotion, no lack of promotion, no loss of pay and more importantly, no loss of FMLA time. Her termination was a result of her medical inability to return to her pre-injury job, which was an eight hour shift at the facility caring for patients. As such, Plaintiff fails to establish a *prima facie* case of retaliation. *See* <u>Dogmanits v. Capital Blue Cross</u>, 413 F. Supp.2d 452 (E.D.Pa. 2005).

Therefore, Plaintiff's claims under the FMLA fail and should be dismissed.

B.    Plaintiff's ADA And PHRA Claims Fail As She Was Not A Qualified Individual And Was Not Terminated As A Result Of Discrimination.

Plaintiff was not a qualified individual under the ADA. Plaintiff performed her job as a physical therapist without restriction prior to her surgery in November 2008. Her employer did not perceive her as a disabled individual. In fact, Plaintiff's Amended Complaint is devoid of any facts to support her allegations that her disability interfered with her ability to walk and stand. In fact, based on Plaintiff's ability to work a full eight hour shift without breaks it is reasonable to assume that she was not disabled and that her employer did not believe her to be disabled.

As previously noted, Plaintiff makes an assertion that her employer was "accommodating" her, but fails to plead any facts that would substantiate those allegations. As such, this Court is not required to accept them as true. Instead, Plaintiff cannot dispute that she was working a full eight hour shift without restriction (per her own doctor) prior to her surgery. If Plaintiff had facts contrary to that, she should have pled them in her complaint. A Plaintiff must plead more than labels and conclusions. *See* Romero v. Allstate Insurance, 2010 WL 4670172 (E.D.Pa. 2010).

Regardless, Plaintiff's inability to her perform her job at any time in the near future prevents her from making a claim under the ADA and PHRA for discrimination since she was terminated as a result of her inability to do her job at the conclusion of her FMLA leave. As previously noted, Plaintiff herein failed to provide her employer with any medical evidence that supports her ability to return to her full-time employment, but instead only submitted a note which says she is limited to working four hours per day. Defendants herein acted reasonably and pursuant to their rights under the FMLA and terminated Plaintiff after she exhausted her leave. As a result, they cannot now be held liable under the ADA and PHRC for not accommodating her medical insufficiency or allegedly retaliating against her as a result of her alleged disability.

Relying on the facts presented by Plaintiff, it is clear that her voluntarily termination was a result of her failure to return from FMLA and not as a result of any discrimination under the ADA or PHRA. Plaintiff does not dispute that she requested and was granted FMLA without question or issue.

As a result, Plaintiff's claims for discrimination, failure to accommodate and retaliation under the ADA and PHRA fail and her claims should be dismissed.

C.     Plaintiff has failed to allege any specific damages under Counts VI and VII.

Plaintiff alleges that she suffered "monetary loss and wage loss" damages as a result of the alleged failure by Attleboro to timely submit her short term disability paperwork and failing to provide correct salary information. Furthermore, she alleges that she suffered damages as a result of defendants' failure to provide her with the appropriate COBRA notices. However, Ms. Fleck fails to allege any specific damages as a result of those alleged failures, but instead generally claims monetary loss and wage loss, along with physical and emotional injuries. If Plaintiff did indeed suffer any loss, she has not pled with enough specificity to maintain valid claims under ERISA. For example, Plaintiff alleges that incorrect salary information was given, but fails to note what the correct amount was and the alleged loss as a result. She fails to even allege that she was entitled to COBRA benefits or for how long and what actual damage she suffered as a result (i.e., medical expenses that were unpaid, loss of insurance, etc.).

More importantly, Ms. Fleck fails to allege that she was ever denied any of those benefits or ever not made whole with regard to those benefits. Actually, to the contrary she pleads that she did in fact receive her short term disability. As discussed in Section E, below, ERISA only allows for certain enumerated damages. Therefore, without more sufficient information regarding any actual loss, Plaintiff has failed to state a valid claim under both Count VI and

Count VII (which is specifically derived from an alleged ERISA event, see Paragraph 92 of Exhibit "A").

        D.      <u>Plaintiff Fails To Allege Any Facts To Support Her Claim For Physical And Emotional Injuries Under The ADA, PHRA, FMLA Or ERISA.</u>

Assuming *arguendo*, this Court does not strike Plaintiff's claims under Counts I-VII. Defendants submit that Plaintiff's claims for physical and emotional injuries, loss of self-esteem, personal humiliation and loss of enjoyment of life are factually unfounded. Plaintiff cites to no facts to support those claims in her Amended Complaint. Therefore, her claims for physical and emotional injuries, loss of self esteem, personal humiliation and loss of enjoyment of life should be dismissed as she has failed to state sufficient facts to support those damages.

        E.      <u>Plaintiff's Cannot Collect Extra-Contractual Or Punitive Damages Under ERISA And COBRA And Therefore, Her Claims To Any Such Damages Should Be Stricken.</u>

ERISA does not permit for recovery of extra-contractual compensatory or punitive damages. <u>Medina v. Anthem Life Ins. Co.</u>, 1993, 983 F.2d 29, *certiorari denied* 114 S. Ct. 66, 510 U.S. 816, 126 L.3d2d, 35, *certiorari denied*, 114 S.Ct.. 73, 510 U.S. 819, 126 L.3d.2d 42. Plaintiff makes bold claims for compensatory, liquidated and punitive damages, along with damages for emotional distress, mental anguish, loss of self-esteem and personal humiliation as detailed above. However, ERISA contains a detailed enforcement scheme, and the United States Supreme Court has found that Congress did not intend to authorize other remedies that it did not incorporate expressly into the law. <u>Wells v. Genesis Health Ventures, Inc</u>. 2005 WL 3150259, 3 (E.D.Pa.,2005). Therefore, assuming *arguendo*, that this Court does not dismiss Counts I-VI for failure to state a claim, all requests for compensatory, liquidated and punitive damages and for any "emotional injuries" must be stricken from her Amended Complaint.

WHEREFORE, Defendants request this Honorable Court to issue an Order granting its

Motion.

Respectfully submitted,

BURNS WHITE, LLC


By:     /s/ Angela A. Cronk
        Jeffrey S. Adler, Esquire
        Angela A. Cronk, Esquire

        Attorneys for Defendants

Exhibit A

**HARDWICK COLLIER, LLC**
**BY:   VIRGINIA HARDWICK, ESQ.  (Attorney I.D. No. 202649)**
**        JOYCE L. COLLIER, ESQ. (Attorney I.D. No. 54324)**
179 North Broad Street
Doylestown, PA. 18901                                    Attorneys for Plaintiff

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| **LINDSAY FLECK** | : | No. 10-cv-5562 |
| 2 Fair Oaks Ct., Newtown PA 18940 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **WILMAC CORPORATION,** | : | |
| **WILMAC MEDICAL INSURANCE PLAN,** | : | |
| **ATTLEBORO ASSOCIATES, LTD.;** | : | |
| **ATTLEBORO NURSING &** | : | |
| **REHABILITATION CENTER** | : | |
| 300 East Winchester Avenue | : | |
| Langhorne, PA 19047 | : | |
| | : | |
| and | : | |
| | : | |
| **SUSAN MITCHELL** | : | |
| | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |

---

### AMENDED COMPLAINT

## I.    INTRODUCTION

1.      This action for equitable, monetary, and other relief is brought by Plaintiff, Lindsay Fleck, to redress intentional violations by Defendants, WILMAC Corporation, WILMAC Medical Insurance Plan, Attleboro Associates, Ltd., Attleboro Nursing and Rehabilitation Center, and Susan Mitchell, of rights secured by the laws of the United States and the Commonwealth of Pennsylvania.

## II.  JURISDICTION

2.      This action is brought pursuant to the Americans with Disabilities Act of 1990 (ADA) and the Americans with Disabilities Amendments Act (ADA-AA), 42 U.S.C. §§ 12101, et seq.; the Family Medical Leave Act (FMLA), 29 U.S.C. § 1601, et seq.; the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, et seq. and pursuant to 28 U.S.C. §1331, and the Pennsylvania Human Relations Act (PHRA), 42 P.S. §951, et seq., as amended, 1991.  The amount in controversy, exclusive of interest and costs, exceeds $150,000.00.

3.      Plaintiff, Lindsay Fleck, has exhausted administrative remedies.  Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 530200901573, on or about May 13, 2009, which was dual filed with the Pennsylvania Human Relations Commission, ("PHRC"), Case No. 200903294.  On or about July 26, 2010, Plaintiff received a Right-to-Sue letter from the EEOC, and this complaint is timely filed within ninety days of receipt of that notice.

4.      State law claims asserted under the PHRA are before this Honorable Court pursuant to 28 U.S.C. §1367, supplemental jurisdiction.

## III.  VENUE

5.      All actions complained of herein took place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania as the place in which the claims arose, and the place where Attleboro Nursing & Rehabilitation Center conducts business.

6.      Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f)(3).

## IV.  PARTIES

7.      Plaintiff, Lindsay Fleck is an adult female who currently resides at 2 Fair Oak Court, Newtown, PA 18940.

8. Defendant WILMAC Corporation ("WILMAC") is a corporation of the Commonwealth of Pennsylvania with a principal place of business at 209 North Beaver Street, York, PA 17043.

9. Defendant WILMAC Medical Insurance plan ("Health Plan") is an employee benefit welfare plan created pursuant to Employee Retirement Income Security Act ("ERISA") Section 3(1), 29 U.S.C. § 1002(1) and offered by WILMAC for the benefit of its employees.

10. Defendant Attleboro Associates, LTD, is a subsidiary of WILMAC and is a company organized and existing under the laws of the Commonwealth of Pennsylvania and is authorized and does business within the Commonwealth of Pennsylvania with its principal place of business at 209 North Beaver Street, York, PA 17043. Attleboro Associates, LTD owns and operates Defendant Attleboro Nursing and Rehabilitation, which conducts business at 300 East Winchester Avenue, Langhorne, PA 19047.

11. Attleboro Associates, LTD And WILMAC exercise control over the operations of Attleboro Nursing and Rehabilitation Center.

12. Attleboro Associates, LTD, WILMAC, and Attleboro Nursing and Rehabilitation Center have intertwined operations and were joint employers of Ms. Fleck.

13. Defendants WILMAC Corp., Attleboro Associates, Ltd., and Attleboro Nursing and Rehabilitation Center (collectively, "Attleboro") employ in excess of fifty (50) employees and are employers within the meaning of the applicable legislation cited herein.

14. Defendant Susan Mitchell is the Director of Human Resources for Defendant Attleboro Nursing and Rehabilitation. She had the authority to act directly or indirectly with regard to human resources issues on behalf of Attleboro Nursing and Rehabilitation, and its parent corporations, Attleboro Associates, LTD and WILMAC.

## V.    FACTUAL BACKGROUND

15.    In or about August 2007, Plaintiff Lindsay Fleck was hired by Attleboro on a per diem basis as a physical therapist.  On or about December 11, 2007, Ms. Fleck became a full time employee of Attleboro.  The job description and performance evaluation provided to Ms. Fleck are labeled "WILMAC Corporation."

**Ms. Fleck's Disability**

16.    Ms. Fleck suffered a disabling injury to her ankle in March 2006.  The injury resulted in a chronic medical condition that limits Ms. Fleck in major life activities.

17.    The injury to Ms. Fleck's ankle was not a mere broken bone that was expected to heal completely, but was a chronic non-healing condition.

18.    Ms. Fleck had surgery on her ankle before she was employed by Attleboro, but that surgery failed to resolve the disability caused by her injury.

19.    At the time that Ms. Fleck was hired by Attleboro in 2007, the disability arising from her ankle injury affected her ability to engage in the major life activities of walking and standing.  She was and is unable to stand for more than an hour, and unable to walk for more than a half mile or a mile.

20.    At all times during Ms. Fleck's employment by Attleboro, she was affected by the disability arising from her injured ankle.

21.    During Ms. Fleck's employment by Attleboro, she utilized a CAM boot as a mitigating measure to allow her to stand for a sufficient period of time to complete her work responsibilities as a physical therapist.

22.    Throughout the course of Ms. Fleck's employment by Attleboro, her supervisor was aware of her disability because the CAM boot she wore was plainly visible.

23. Ms. Fleck had a disability as defined by the Americans With Disabilities Act and the Americans with Disabilities Amendments Act, and as defined by the Pennsylvania Human Relations Act.

24. Ms. Fleck was a qualified person with a disability, in that she had a substantial impairment of the major life activities of walking and standing.

25. Ms. Fleck was a qualified person with a disability, in that she could perform the essential functions of her job with reasonable accommodations.

26. Ms. Fleck had a history of impairment of a major life activity and/or was regarded by Attleboro as having such an impairment.

**Ms. Fleck Requests FMLA Leave and is Subjected to Retaliation**

27. Throughout the course of her employment with Attleboro, Ms. Fleck performed her duties well, receiving several raises.

28. On or about August 7, 2008, Ms. Fleck notified Attleboro that she would require further surgery on her ankle. She requested the paperwork needed for FMLA leave and for short term disability.

29. On or about August 18, 2008, Ms. Fleck's supervisor issued a notice entitled "WILMAC Corporation Employee Disciplinary Notice" to Ms. Fleck for an incident that occurred on August 15. The incident, which supposedly prompted the written discipline, arose when Ms. Fleck appropriately placed a speed restrictor on a patient's wheelchair because the patient had been rolling backwards in her chair and posed a safety threat to other patients.

30. Ms. Fleck's actions with regard to the August 15 incident were at all times appropriate and were properly documented in both the 24-hour report and interdisciplinary progress notes, and were reported at a morning stand up meeting.

31.     The "Employee Disciplinary Notice" stated that Ms. Fleck "initially refused" to reevaluate the device, when in fact she requested help to come up with an alternative intervention to maintain patient safety.

32.     The "Employee Disciplinary Notice" was signed by Defendant Susan Mitchell.

33.     Ms. Fleck was on vacation from August 16 through August 26. She was presented with the Employee Disciplinary Notice on August 27.

34.     The WILMAC employee handbook (which is entitled WILMAC Family Member Handbook) provides for progressive discipline. The steps provided for in the progressive discipline, including thorough investigation by the supervisor and of counseling of the employee, were not followed before the written Employee Disciplinary Notice was provided to Ms. Fleck.

35.     On information and belief, Attleboro, through Ms. Mitchell, disciplined Ms. Fleck in retaliation for her stated intention to take FMLA leave and with the intention of interfering with her taking of such leave.

36.     Despite Ms. Fleck's request on August 7 for the forms she needed for FMLA leave and STD, those forms had still not been provided to her in October 2008. Accordingly, she made another request and received the forms.

37.     On or about October 31, 2008, Ms. Fleck gave signed FMLA and STD paperwork to Susan Mitchell, Director of Human Resources at Attleboro.

38.     On or about November 19, 2008, Ms. Fleck learned that neither Ms. Mitchell nor any other representative from Attleboro had submitted her STD claim, even though she had submitted the forms promptly to Attleboro once she was given them. This meant that she would receive no income following her surgery, which was scheduled for the next day. Ms. Fleck called the disability carrier and submitted the claim herself. When Attleboro finally submitted Ms.

Fleck's claim, the company provided incorrect salary information, so that the benefits – when belatedly received – were less than the amount to which she was entitled.

39. On or about November 20, 2008, Ms. Fleck had surgery on her ankle and commenced her FMLA leave.

### Ms. Fleck Requests a Reasonable Accommodation, But Her Employer Fails to Engage in An Interactive Process, and Instead Terminates Her Employment.

40. On or about February 5, 2009, Ms. Fleck advised her supervisor that she was able to return to work at a schedule of four hours per day. Ms. Fleck submitted a note from her doctor stating that she could increase her hours over a six-week span.

41. Ms. Fleck therefore requested a reasonable accommodation consisting of a shortened work schedule for several weeks.

42. On February 6, 2009, Ms. Fleck's supervisor and Defendant Susan Mitchell from Human Resources called Ms. Fleck. They told Ms. Fleck that her employment was terminated because she was unable to work eight hours per day. They instructed Ms. Fleck not to return to work on February 12, 2009, when her FMLA leave was over, telling her that she was fired.

43. Ms. Fleck offered to discuss the matter with her doctor to get a modified order that would allow her to work an eight-hour shift. Ms. Fleck's physician wrote an alternative order providing that Ms. Fleck could work an eight-hour day if she had a break every hour.

44. Nevertheless, Attleboro refused to discuss the alternative work schedule, reiterating that her employment was terminated.

45. Attleboro also refused to consider a reasonable accommodation consisting of extended unpaid leave.

46. Attleboro refused to make the reasonable accommodation requested by Ms. Fleck.

47.    Attleboro did not engage in the required interactive process with Ms. Fleck to determine whether there was another accommodation that would allow Ms. Fleck to return to work.

## Attleboro's Claim that Ms. Fleck Was Terminated for Failure to Return from FMLA leave Was Pretextual; the Decision to Terminate Ms. Fleck's Employment Was Made Before Her FMLA Leave Expired.

48.    Attleboro, through Defendant Ms. Mitchell and Ms. Fleck's supervisor, advised Ms. Fleck by telephone that she was fired on February 6, 2009.

49.    On February 7, 2009, Ms. Fleck sent an email to her supervisor and to Susan Mitchell asking for written confirmation of her termination and the reason for her termination.

50.    When Ms. Fleck received no response to her February 7 email, she sent a letter on February 10 to Defendant Ms. Mitchell again requesting that she be notified in writing of her termination.

51.    Ms. Fleck's twelve-week FMLA leave expired on February 12, 2009. She did not return to work that day because she had been told that her employment was terminated and because the company refused to provide a reasonable accommodation in the form of a modified work schedule.

52.    On February 12, 2009, Susan Mitchell of HR sent a letter to Ms. Fleck stating that "as of February 12, 2009 your 12 weeks of leave under the federal Family and Medical Leave Act was exhausted." The letter continued, saying: "This is considered a voluntary termination based on the failure to return from a leave of absence."

## Attleboro Fails to Make Required Payments and Fails to Send Notice Required Under COBRA and ARRA

53.     Attleboro paid Ms. Fleck for accrued vacation time to which she was due, but improperly deducted amounts for health benefits and flexible spending account (at rates higher than during her employment), despite the fact that she was no longer covered under those plans.

54.     Despite terminating her employment on February 6, 2009, the WILMAC Medical Insurance Plan did not send Ms. Fleck timely notice and election to continue health benefits pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). This notice was not sent to Ms. Fleck until nine months later, on November 23, 2009.

55.     Under COBRA, Plaintiff should have been notified of her COBRA rights within thirty (30) days of her termination. 29 U.S.C. § 1166.

56.     Despite terminating her employment on February 6, 2009, the WILMAC Medical Insurance Plan failed to notify Ms. Fleck of the reduction in the COBRA premium resulting from the passage of the American Recovery and Reinvestment Act of 2009 ("ARRA"). This notice was not sent until nine months later, on November 23, 2009.

57.     Under the ARRA, employees suffering an involuntary termination may request a subsidy towards the COBRA premium, which reduces the required premium by sixty-five percent (65%).


## Ms. Fleck Was Injured By Attleboro's Wrongful Termination of Her Employment

58.     Attleboro, through Defendant Ms. Mitchell, terminated Ms. Fleck's employment because of her disability or because Attleboro regarded her as disabled.

59.     Attleboro terminated Ms. Fleck's employment in retaliation for her exercise of her rights under FMLA.

60.     As a direct and proximate result of the unlawful employment practices of Attleboro, Ms. Fleck has suffered damages including but not limited to lost income, lost benefits, emotional distress and loss of enjoyment of life.

## COUNT I

### PLAINTIFF'S CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12101, et seq.
### AGAINST DEFENDANTS WILMAC, ATTLEBORO ASSOCIATES LTD. AND
### ATTLEBORO NURSING AND REHABILITATION CENTER

#### Disability Discrimination

61.     Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

62.     At all times material hereto, Plaintiff is, and was a qualified individual with a "disability" within the meaning of the ADA, as amended by the ADA-AA, as defined at 42 U.S.C. § 12102(2), 29 C.F.R. § 1630.2(g), in that she has a physical impairment that limits one or more of her major life activities, has a record of such impairments, and/or is perceived and regarded by Defendants as having such an impairment. Plaintiff is substantially limited in the major life activities of walking and standing.

63.     Defendants' deliberate discrimination and harassment of Plaintiff through disciplinary action and termination of her employment because of her disability, her record of disability and/or her perceived disability is unlawful discrimination and is in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et. seq. This conduct has caused Plaintiff to suffer emotional distress, mental anguish, monetary loss, wage loss, loss of self-esteem, personal humiliation, and loss of enjoyment of life.

**WHEREFORE,** Plaintiff, Lindsay Fleck, respectfully requests judgment in her favor and against Defendants for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand ($150,000) Dollars; plus costs of this action, reimbursement of back pay with

interest, front pay, attorneys fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT II

### PLAINTIFF'S CLAIMS UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT (43 P.S. §951, et seq.) AGAINST DEFENDANTS WILMAC, ATTLEBORO ASSOCIATES LTD. AND ATTLEBORO NURSING AND REHABILITATION CENTER

#### Disability Discrimination

64.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

65.     Pennsylvania's Human Relations Act, 43 P.S. §951, et seq, provides for compensatory damages in appropriate cases of violation of the Act's prohibition of discrimination based on a disability.

66.     Defendants' deliberate discrimination and harassment of Plaintiff through disciplinary action and termination of her employment because of her disability, her record of disability and/or her perceived disability is unlawful discrimination and is in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.  This conduct has caused Plaintiff to suffer emotional distress, mental anguish, monetary loss, wage loss, loss of self-esteem, personal humiliation, and loss of enjoyment of life.

67.     The egregious nature of Defendant's illegal misconduct and the extent of Plaintiff's financial, physical, and emotional injuries and damages justify a recovery of monetary damages for the value of Plaintiff's claims, and the facts and circumstances of this case entitle Plaintiff to additional damages under state law.

**WHEREFORE,** Plaintiff, Lindsay Fleck, respectfully requests judgment in her favor and against Defendants for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand ($150,000) Dollars; plus costs of this action, reimbursement of back

pay with interest, front pay, attorney's fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

**COUNT III**

**PLAINTIFF'S CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101, et seq.**
**AGAINST DEFENDANTS WILMAC, ATTLEBORO ASSOCIATES LTD. AND**
**ATTLEBORO NURSING AND REHABILITATION CENTER**

**Disability Discrimination, Failure to Accommodate**

68.     Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

69.     At all times material hereto, Plaintiff was a qualified individual with a "disability" within the meaning of the ADA, as amended by the ADAA, as defined at 42 U.S.C. § 12102(2), 29 C.F.R. § 1630.2(g), in that she has a physical impairment that limit one or more of her major life activities, and that she was capable of performing the essential functions of her job with a reasonable accommodation.

70.     Plaintiff advised Defendants of her need for a reasonable accommodation in the form of reduced hours or a work schedule that would allow breaks.

71.     Defendants failed to engage in an interactive process with Plaintiff and failed to provide a reasonable accommodation.

**WHEREFORE**, Plaintiff, Lindsay Fleck, respectfully requests judgment in her favor and against Defendants for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand ($150,000) Dollars; plus costs of this action, reimbursement of back pay with interest, front pay, attorney's fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT IV

### PLAINTIFF'S CLAIMS UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT (43 P.S. §951, et seq.) AGAINST DEFENDANTS WILMAC, ATTLEBORO ASSOCIATES LTD. AND ATTLEBORO NURSING AND REHABILITATION CENTER

### Disability Discrimination, Failure to Accommodate

72.     Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

73.     At all times material hereto, Plaintiff was a qualified individual with a "disability" within the meaning of the Pennsylvania Human Relations Act, in that she has a physical impairment that limits one or more of her major life activities, and that she was capable of performing the essential functions of her job with a reasonable accommodation.

74.     Plaintiff advised Defendants of her need for a reasonable accommodation in the form of reduced hours or a work schedule that would allow breaks.

75.     Defendants failed to engage in an interactive process with Plaintiff and failed to provide a reasonable accommodation.

**WHEREFORE**, Plaintiff, Lindsay Fleck, respectfully requests judgment in her favor and against Defendants for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand ($150,000) Dollars; plus costs of this action, reimbursement of back pay with interest, front pay, attorney's fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT V

### PLAINTIFF'S CLAIMS UNDER THE FAMILY AND MEDICAL LEAVE ACT OF 1993, 29 U.S.C. § 2601 et seq. AGAINST ALL DEFENDANTS

76.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

77. The Family Medical Leave Act 29 U.S.C. § 2615(a)(2)("FMLA") makes it unlawful for an employer to interfere with an employee's right to take a leave under the FMLA.

78. On information and belief, Defendants' actions in disciplining Ms. Fleck the same week after she advised the Company of her need to take FMLA leave and the Company's delay in providing the paperwork for her leave were intended to interfere with Ms. Fleck's right to take the leave.

79. The Family Medical Leave Act 29 U.S.C. § 2615(a)(2)("FMLA") makes it unlawful for an employer to retaliate against an employee because the employee has taken or sought a leave under the FMLA.

80. Plaintiff was subjected to adverse action in that her employment was terminated because she took a leave of absence to which she was entitled under the FMLA.

81. Defendant Susan Mitchell, as HR director for Attelboro Nursing and Rehabilitation Center, acted in the interest of her employer Attleboro with regard to the actions she took concerning Plaintiff Ms. Fleck. Ms. Mitchell was in whole or in part responsible for the decision to terminate Plaintiff and for the notification of Plaintiff's termination in violation of the Family Medical Leave Act, 29 U.S.C. § 2601, et seq.

82. On information and belief, Defendants' decision to terminate Plaintiff's employment and refusal to consider a reasonable accommodation in the form of reduced hours or hourly breaks, was in retaliation for taking leave under the FMLA.

83. On information and belief, Defendants' termination of Plaintiff's employment was intended to interfere with her right to take FMLA leave in the future.

84. Defendants' deliberate retaliation and interference is unlawful discrimination in violation of the Family Medical Leave Act, 29 U.S.C. § 2601, et seq. This conduct has caused

Plaintiff to suffer emotional distress, mental anguish, monetary loss, wage loss, loss of self-esteem, personal humiliation, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff, Lindsay Fleck, respectfully requests judgment in her favor and against Defendants for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand ($150,000) Dollars; plus costs of this action, reimbursement of back pay with interest, front pay, attorneys fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

**COUNT VI**

**PLAINTIFF'S CLAIMS FOR INTERFERENCE WITH PROTECTED RIGHTS UNDER EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA), 29 U.S.C. §§ 1001, et seq. AGAINST ALL DEFENDANTS**

85.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

86.     Defendants, by and through their employees and agents, and Defendant Susan Mitchell, individually and in concert with each other, discharged and otherwise discriminated against Plaintiff for exercising rights to which she was entitled under the provisions of an employee benefit plan, or for the purpose of interfering with the attainment of rights to which she may have become entitled under the plan, in violation of the Employee Retirement Income Security Act, specifically 29 U.S.C. § 1140.

87.     Defendants' intent to interfere with Plaintiff's benefits is demonstrated in numerous ways, including but not limited to, the actions of Susan Mitchell, who refused to send in short term disability forms in a timely manner despite repeated requests, in Mitchell's failure to supply correct salary data to the short term disability carrier, in the timing and circumstances of Plaintiff's termination and in Defendants' failure to supply required notices under COBRA and ARRA to Plaintiff.

88.     Defendants discharged Ms. Fleck in retaliation for exercising her rights under the employee benefit plan.

89.     Defendants, including Ms. Mitchell, acted with specific intent to interfere with Ms. Fleck's rights under ERISA.

90.     This conduct has caused Plaintiff to suffer emotional distress, mental anguish, monetary loss, wage loss, loss of self-esteem, personal humiliation, and loss of enjoyment of life.

WHEREFORE, Plaintiff, Lindsay Fleck, respectfully requests judgment in her favor and against Defendants for compensatory, liquidated and punitive damages in an amount exceeding One Hundred Fifty Thousand ($150,000) Dollars; plus costs of this action, reimbursement of back pay with interest, front pay, attorney's fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT VII

### PLAINTIFF'S CLAIMS FOR VIOLATIONS OF COBRA, 29 U.S.C. §§ 1161-1169, AND THE ARRA
### AGAINST ALL DEFENDANTS

91.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

92.     Plaintiff suffered a qualifying event under ERISA § 603, 29 U.S.C. § 1163 (2) when she was terminated from employment on February 6, 2009.

93.     By failing to provide COBRA and ARRA notice to Plaintiff within thirty (30) days of her termination, Defendants violated ERISA § 606, 29 U.S.C. § 1166.

94.     As a result of Defendants' COBRA and ARRA violation, Plaintiff has suffered damages as set forth herein.

WHEREFORE, Plaintiff, Lindsay Fleck, respectfully requests judgment in her favor and against Defendants for compensatory, liquidated and punitive damages in an amount exceeding One Hundred Fifty Thousand ($150,000) Dollars, including the daily penalty of $110.00, as set

forth in ERISA § 502(c)(1), 29 U.S.C. § 1132 (c)(1) for Defendants' failure to issue appropriate

COBRA notice as required by ERISA, the reimbursement of all benefits that Plaintiff would

have received if not for Defendants' illegal conduct, and such other relief as the Court may deem

just, proper, and appropriate in the circumstances of this case.


HARDWICK COLLIER, LLC


BY: _Virginia L. H_____

**VIRGINIA L. HARDWICK, ESQUIRE**
**JOYCE L. COLLIER, ESQUIRE**
Attorneys for Plaintiff

Dated: December 9, 2010

HARDWICK COLLIER, LLC
BY: VIRGINIA HARDWICK, ESQ. (Attorney I.D. No. 202649)
JOYCE L. COLLIER, ESQ. (Attorney I.D. No. 54324)
179 North Broad Street
Doylestown, PA. 18901                          Attorneys for Plaintiff

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**LINDSAY FLECK**          :    No. 10-cv-5562
2 Fair Oaks Ct., Newtown PA 18940    :
                          :
    Plaintiff,        :
        v.     :
                          :
**WILMAC CORPORATION, ET AL.**   :
300 East Winchester Avenue        :
Langhorne, PA 19047               :
                          :
and                       :
                          :
**SUSAN MITCHELL**               :
                          :    JURY TRIAL DEMANDED
    Defendants.     :

### CERTIFICATION OF SERVICE

I, VIRGINIA L. HARDWICK, ESQ., attorney for Plaintiff Lindsay Fleck, hereby

certifies that a true and correct copy of Plaintiff's Amended Complaint was served via

Email and Regular Mail on 9th day of December 2010, to the following:

Angela Allen Cronk, Esquire
Burns White LLC
100 Four Falls, Suite 515
1001 Conshohocken State Road
West Conshohocken, PA 19428

BY: _____
      **VIRGINIA L. HARDWICK, ESQUIRE**
      Attorney for Plaintiff

- 18 -

Exhibit B

PENNSYLVANIA ORTHOPAEDIC FOOT
AND ANKLE SURGEONS
**WEN CHAO, M.D.**
230 W. WASHINGTON SQUARE, 5TH FLOOR
PHILADELPHIA, PA 19106
(215) 829-3668 TEL.
(215) 829-5002 FAX

DEA #
LIC. # 047923-L
NPI # 1497785471

NAME: Lindsay Steele    AGE:

ADDRESS:    DATE: 2/6/09

TAMPER-RESISTANT FEATURES INCLUDE:
SAFETY BLUE ERASE-RESISTANT BACKGROUND
AND "ILLEGAL" PANTOGRAPH

℞

Lindsay is able to
return to work on
2/12/09 with
3 hrs of work daily.

REFILL _____ TIMES

☑ LABEL

SUBSTITUTION PERMISSIBLE

IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED, THE
PRESCRIBER MUST HAND WRITE "BRAND NECESSARY" OR "BRAND
MEDICALLY NECESSARY" IN THE SPACE BELOW.

8HOS0206242