**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LINDSAY FLECK, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO.  10-05562 |
| | : | |
| WILMAC CORPORATION, | : | |
| WILMAC MEDICAL INSURANCE | : | |
| PLAN, ATTLEBORO ASSOCIATES, | : | |
| LTD., ATTLEBORO NURSING & | : | |
| REHABILITATION CENTER, and | : | |
| SUSAN MITCHELL, | : | |
| | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                                                    May 19, 2011

Presently before the Court is the Motion of Defendants WILMAC Corporation,

WILMAC Medical Insurance Plan, Attleboro Associates, Ltd., Attleboro Nursing &

Rehabilitation Center, and Susan Mitchell to Dismiss the Amended Complaint of Plaintiff

Lindsay Fleck pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons,

the Motion is granted in part and denied in part.

## I.        FACTUAL AND PROCEDURAL BACKGROUND

This action centers upon Plaintiff Lindsay Fleck's allegations of discrimination by her

former employer, Defendant Attleboro Nursing and Rehabilitation Center ("Attleboro"), on the

basis of Plaintiff's disability and exercise of rights related thereto.  Plaintiff Fleck, of Newtown,

Pennsylvania, was hired by Attleboro as a per diem physical therapist in August of 2007.  (Am.

Compl. ¶ 15.)  She became a full-time employee in December of 2007.  (Id.)

According to the facts set forth in the Amended Complaint, Plaintiff suffered an ankle injury in March of 2006 that has resulted in chronic medical problems.  (Id. ¶ 16.)  This ongoing ankle condition prevents Plaintiff from standing for more than an hour or walking for more than a half mile.  (Id. ¶ 19.)  Plaintiff had surgery on her ankle prior to her employment with Attleboro, but the surgery failed to resolve the injury.  (Id. ¶ 18.)  This chronic injury affected Plaintiff during her entire tenure at Attleboro, to the point that she used a cam boot to enable her to stand for the time required by her position.  (Id. ¶¶ 20-21.)  According to Plaintiff, her supervisor was aware of her disability because the cam boot was plainly visible.  (Id. ¶ 22.)

On or about August 7, 2008, Plaintiff notified Attleboro that she would need further surgery on her ankle and requested paperwork for short-term disability and leave pursuant to the Family Medical Leave Act ("FMLA").  (Id. ¶ 22.)  Soon after, on or about August 18, 2008, Plaintiff's supervisor issued her a written disciplinary notice signed by Defendant Susan Mitchell, Director of Attleboro Human Resources.  (Id. ¶ 29.)  Plaintiff received the notice upon returning to work from vacation on August 27.  (Id. ¶ 33.)  The notice stemmed from an August 15th incident during which Plaintiff placed a speed restrictor on a patient's wheelchair. (Id. ¶ 29.)  Plaintiff alleges that she did so appropriately, as the patient had posed a safety threat to other patients by rolling backwards in her chair.  (Id. ¶ 29.)  She maintains that her actions were properly documented in a twenty-four hour report and interdisciplinary progress notes, and were reported at a morning meeting.  (Id. ¶ 30.)  The notice stated that Plaintiff had refused to re-evaluate the device, although Plaintiff avers that she had actually "requested help to come up with an alternative intervention to maintain safety."  (Id. ¶ 31.)  Plaintiff further alleges that her

employer, in issuing the notice, did not follow the progressive steps of discipline required by the WILMAC employee handbook, such as investigation by a supervisor and counseling of the employee before such notice is issued. (Id. ¶ 34.) According to Plaintiff, prior to the incidents in question, she had a positive performance record. (Id. ¶ 28.) In light of these events, Plaintiff asserts that Attleboro Nursing, via Defendant Mitchell, disciplined Plaintiff in retaliation for her request to take FMLA leave and with the intent of interfering with her taking such leave. (Id. ¶ 35.)

Additionally, Plaintiff avers that she had still not received the requested FMLA forms by October 2008, such that she had to re-request them. (Id. ¶ 36.) She submitted her completed FMLA and short-term disability paperwork to Defendant Mitchell on or about October 31, 2008. (Id. ¶ 37.) On or about November 19, 2008, Plaintiff learned that Defendant Mitchell had not submitted her disability claim. (Id. ¶ 38.) As a result, she would receive no income following her surgery, which was scheduled for the following day. (Id. ¶ 38.) When Attleboro finally submitted Plaintiff's claim, the company purportedly provided incorrect salary information, which decreased the amount of her benefits. (Id. ¶ 38.) Plaintiff commenced her FMLA leave on or around November 20, 2008. (Id. ¶ 39.)

On or about February 5, 2009, Plaintiff advised her supervisor that she was able to return to work at a schedule of four hours per day. (Id. ¶ 40.) She submitted a note from her doctor stating that she could increase her hours over a period of six weeks. (Id.) On February 6, 2009, Plaintiff's supervisor and Defendant Mitchell called Plaintiff to inform her that her employment was terminated because she was unable to work eight hours per day. (Id. ¶ 42.) Plaintiff alleges that they instructed her not to return to work on February 12, 2009 when her FMLA leave ended.

(Id.) According to Plaintiff, her doctor then wrote an alternative order stating that Plaintiff could work an eight-hour day if she had a break every hour. (Id. ¶ 43.) She alleges that Defendant Attleboro refused to discuss this alternative work schedule or Plaintiff's proposal of extended unpaid leave, nor did Defendant make any effort to determine whether a different accommodation would allow Plaintiff to return to work. (Id. ¶¶ 44-47.) Consequently, Plaintiff did not return to work at the end of her FMLA leave on February 12. (Id. ¶ 51.)

Plaintiff emailed her supervisor and Defendant Mitchell on February 7, 2009 requesting written confirmation and explanation of her termination. (Id. ¶ 49.) When she received no response, she sent a letter requesting the same on February 10. (Id. ¶ 50.) On February 12, Plaintiff received a letter from Defendant Mitchell stating that she had exhausted her twelve weeks of leave under the federal Family and Medical Leave Act and was being voluntarily terminated "based on the failure to return from a leave of absence." (Id. ¶ 52.)

Post-termination, Attleboro Nursing paid Plaintiff for accrued vacation time. (Id. ¶ 53.) According to Plaintiff, however, the entity improperly deducted amounts for her health benefits and flexible spending account at rates higher than during her employment, despite the fact that she was no longer covered under those plans. (Id.) Plaintiff further alleges that, despite her termination on February 6, 2009, Defendant WILMAC Medical Insurance Plan did not send Plaintiff timely notice of her right to extend her health benefits pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). (Id. ¶ 54.) According to Plaintiff, she did not receive such notice until nine months later, on November 23, 2009. (Id.) Similarly, Defendant WILMAC failed to notify Plaintiff of the reduction in COBRA premiums resulting from the passage of the American Recovery and Reinvestment Act of 2009 ("ARRA") until

November 23, 2009.  (Id. ¶¶ 56-57.)

Plaintiff avers that Attleboro, via Defendant Mitchell, terminated her employment because of her purported disability and in retaliation for her exercise of her FMLA rights.  (Id. ¶ 58.)  As a result, Plaintiff now alleges damages "including but not limited to lost income, lost benefits, emotional distress, and loss of enjoyment of life."  (Id. ¶ 60.)  Plaintiff commenced this action on October 21, 2010.  On December 10, 2010, she filed an Amended Complaint, asserting violations of: (1) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., by Defendants Attleboro, WILMAC, and Attleboro Associates Ltd. ("Attleboro Associates") for disability discrimination (Count I) and failure to accommodate (Count III); (2) the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq., against Defendants Attleboro, WILMAC, and Attleboro Associates for disability discrimination (Count II) and failure to accommodate (Count IV); (3) the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq., by all Defendants (Count V); (4) the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., by all Defendants (Count VI); and (5) COBRA, 29 U.S.C. §§ 1161-1169, and the ARRA, Pub. L. No. 111-5 123 Stat. 115 (2009), by all Defendants (Count VII).

On December 30, 2010, Defendants moved to dismiss Plaintiff's ADA, PHRA, and FMLA claims (Counts I-V) for insufficient pleading, the ERISA and COBRA claims (Counts VI and VII) for failure to specify damages, all claims for emotional distress and punitive damages, and all individual claims against Defendant Mitchell.  Plaintiff filed a Response in Opposition on January 20, 2011, and a Supplemental Memorandum in Opposition on March 30, 2011. Defendants filed a Reply on April 11, 2011.  The Court now considers Defendants' Motion.

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). Federal Rule of Civil Procedure 8 does not call for detailed factual allegations; rather, it requires a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8; Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

The Supreme Court has made clear, however, that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Instead, the plaintiff must offer "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. To do so, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556-57); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (adopting Iqbal's standards).

## III.    DISCUSSION

### A.    Whether Plaintiff has Stated a Valid Claim Under the ADA and PHRA

The ADA prohibits employment discrimination against "a qualified individual on the basis of disability" with regard to "the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment" on the basis of such disability. 42 U.S.C.

§ 12112(a).[1] The term "discriminate" includes the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless the employer demonstrates that such accommodations would impose an "undue hardship" on the operation of their business. 42 U.S.C. § 12112(b)(5)(A).

To establish a *prima facie* case of discrimination under the ADA, the plaintiff must allege that: 1) she is "disabled" within the meaning of the ADA; 2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) she has suffered an adverse employment decision as a result of discrimination. Gaul v. Lucent Techs., 134 F.3d 576, 580 (3d Cir. 1998) (citing Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996)). Plaintiff alleges that Defendants violated the ADA and PHRA by refusing to provide or even discuss potential accommodations for Plaintiff's ankle condition upon her return from FMLA leave (Counts III and IV), and by terminating her on account of her alleged disability (Counts I and II). In response, Defendants contend that Plaintiff was neither disabled nor a "qualified individual" under the ADA, as she was unable to perform the essential functions of her position after her November 2008 surgery. (Defs.' Mot. Dismiss 7.) The Court considers these arguments in turn.

**1.  Whether Plaintiff was Disabled**

The ADA provides that an individual has a disability if she has: (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or (3) is "regarded as having such an impairment." 42 U.S.C. §

---

[1] The same legal standard applies to Plaintiff's claims under the ADA and the PHRA. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). Therefore, the Court's analysis of Plaintiff's ADA claims also applies to Plaintiff's PHRA claims.

12102(1). Plaintiff argues that her chronic ankle injury qualifies as a disability under the ADA because it substantially limits her ability to walk and stand. Defendants counter that Plaintiff's impairment does not constitute a disability because she was able to work full eight-hour shifts without restriction or accommodation before her November 2008 surgery. (Defs.' Mot. Dismiss 7.)

Whether an individual is substantially limited in a major life activity is a question of fact. Carraway v. Borough of Wilkinsburg, No. CIV.A.9-372, 2009 WL 2981955, at *1 (W.D. Pa. Sept. 11, 2009) (citing Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 763 (3d Cir. 2004)). Before Congress amended the ADA in 2008, courts construed the Act strictly, finding that an individual was "substantially limited" only if she had "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 185 (2002). In another leading ADA case, the Supreme Court dictated that the degree of limitation caused by an individual's impairment should be determined with reference to the ameliorative effects of mitigating measures. Sutton v. United Airlines, Inc., 527 U.S. 471, 499 (1999).

With the passage of the ADA Amendments Act of 2008 ("ADAAA"), however, Congress explicitly rejected Toyota and Sutton in an effort to promote a less restrictive interpretation of "disability" under the ADA. Pub. L. No. 110–325, § 2(b)(1)-(6), 122 Stat. 3553 (2008). In doing so, Congress declared that "the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations," and that "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." Pub. L. No. 110–325, § 2(b)(5), 122 Stat. at 3554.

As an initial matter, the Court must decide whether to evaluate Plaintiff's disability using the more restrictive pre-amendment standard or the broader interpretation espoused by the ADAAA. The Third Circuit has held that the ADAAA, effective January 1, 2009, is not retroactively applicable. Britting v. Sec'y, Dept. of Veterans Affairs, No. CIV.A.10-2554, 2011 WL 300240, at *2 (3d Cir. Feb. 1, 2011); Larkin v. Methacton Sch. Dist., No. CIV.A.09-4146, 2011 WL 761548, at *27 n.8 (E.D. Pa. Feb. 23, 2011). Defendants argue that, because Plaintiff cites her use of the cam boot before her surgery in November 2008 as evidence that she was "substantially limited" in a major life activity, the Court should apply the pre-amendment ADA. (Defs.' Reply 1-2.) The Court's relevant determination, however, is whether the plaintiff had a disability *at the time of* the adverse employment decision. Rahsman v. Dewberry-Goodkind, Inc., No. CIV.A.05-1931, 2007 WL 188571, at *6 (M.D. Pa. Jan. 22, 2007). Here, the discriminatory acts at issue – Defendants' alleged refusal to accommodate and subsequent termination of Plaintiff – occurred in February of 2009. Given that these adverse decisions occurred after the ADAAA's effective date of January 1, 2009, the Court will use the amended standard.

Under the broadened standards of the ADAAA, the Court finds Plaintiff's allegations as to her disability sufficient to withstand the pleading requirements of Rule 12(b)(6). According to the Amended Complaint, Plaintiff's condition renders her unable stand for more than an hour or walk more than a half mile. (Am. Compl. ¶ 19.) Prior to her surgery, Plaintiff alleges that she could stand or walk for a sufficient amount of time to fulfill her work duties only with the use of a cam boot. (Id. ¶ 21.) Post-surgery, her doctor's recommendation that she seek a part-time work schedule or additional breaks suggests even further limitation on Plaintiff's mobility. (Id.

¶¶ 40, 43.)  Nowhere do the allegations suggest that Plaintiff's condition had improved at the time of her termination or that she no longer required the use of the cam boot to aid her in standing and walking.  Even under the more restrictive standards of the pre-2009 ADA, these allegations, read in a light most favorable to Plaintiff, are sufficient to raise an inference that Plaintiff was disabled at the time of the adverse employment actions.  As such, the Court would be premature in dismissing Plaintiff's claims at this stage of litigation.[2]

## 2.    Whether Plaintiff was "Regarded as" Disabled

Alternatively, Plaintiff argues that she falls under the ADA's third definition of disability because Defendants regarded her as disabled.  The pre-amendment ADA required a plaintiff to show that the employer either "mistakenly believed that [the employee has] a physical impairment that substantially limits one or more major life activities" or "mistakenly believed that an actual non-limiting impairment substantially limits one or more major life activities."  Wilson v. MVM, Inc., 475 F.3d 166, 179 (3d Cir. 2007) (quoting Sutton, 527 U.S. at 489); see also 29 C.F.R. § 1630.2(l)(1), (3) (2006) (defining "regarded as having such an impairment").  Under the more expansive standards of the ADAAA, an individual is regarded as disabled if she

---

[2]  Plaintiff also alleges that Defendants discriminated against her on the basis of her disability by issuing her an unwarranted disciplinary notice in 2008.  Notably, under the pre-amendment ADA, several Third Circuit cases found that plaintiffs who could walk up to a half mile or stand for up to an hour were not substantially limited for the purposes of the statute.  See, e.g., Kelly v. Drexel Univ., 94 F.3d 102, 108 (3d Cir. 1996).  Those cases, however, had reached the summary judgment stage and relied upon a fully developed factual record.  Unlike Kelly and its progeny, this Court has yet to evaluate a number of factors relevant to a disability determination – for example, the difficulty Plaintiff experienced in sustaining her level of mobility or the speed at which she could walk.  Accordingly, the Court will allow Plaintiff's claim to proceed even to the extent it relies upon Defendants' purportedly unwarranted disciplinary action in 2008.

establishes that "she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment . . . ." Pub. L. No. 110–325 § 3(3)(A), 122 Stat. at 3555. In contrast to the pre-amendment ADA, an individual is "regarded as" disabled under the ADAAA "whether or not the impairment limits or is perceived to limit a major life activity." Id.

In light of the ADAAA's de-emphasis on an employer's beliefs as to the severity of a perceived impairment, Defendants' argument that Plaintiff could work a full shift without breaks pre-surgery fails to undercut her allegations that Defendants "regarded her" as disabled at the time of her termination. In support of her claim, Plaintiff emphasizes that (1) at all times during her employment, she wore a plainly visible cam boot to aid her in standing and walking a sufficient amount to carry out her duties; (2) she notified her employer of her need for additional surgery on her ankle, and subsequently requested FMLA leave and short-term disability; and (3) a week before her FMLA leave ended (and presumably her proposed return date), she notified her supervisor via a note from her doctor that she would be unable to work a full eight-hour shift without breaks due to her ankle condition. Given the broad standards of the ADAAA and the factually-intensive nature of this inquiry, the Court finds that these allegations raise a plausible inference that Defendants regarded Plaintiff as disabled within the meaning of the Act.[3] To the extent Plaintiff's claim relies upon Defendants' unwarranted disciplinary action in 2008 and thus

---

[3] Notably, the ADAAA also dictates that a plaintiff who is only perceived as disabled may not seek reasonable accommodation. Pub. L. No. 110-325 § 6(a)(1)(h), 122 Stat. at 3558 (codified 42 U.S.C. 12201(h)). Thus, the Court considers Plaintiff's alternative argument as to her perceived limitation only in the context of her discrimination claims (Counts I and II) – not her claims for failure to provide reasonable accommodation (Counts III and IV).

invokes the pre-amendment ADA, the Court again declines to dismiss the claim before the parties have a chance to fully develop the factual record.

### 3.      Whether Plaintiff was a Qualified Individual

A qualified individual under the ADA is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  Defendants contend that Plaintiff's inability to return to full-time employment after surgery rendered her unqualified for ADA protection. (Def.'s Mot. Dismiss 7.)  This argument, however, ignores an essential element of the definition of a "qualified" individual – that the employee may sufficiently perform her position "*with or without reasonable accommodation*."  Plaintiff alleges that she notified her employer that she was able to return to work with the accommodation of a temporarily reduced work schedule. After learning that she would be terminated for her inability to return to work full-time, she proposed a full-time schedule with hourly breaks or extended unpaid leave.  According to Plaintiff, rather than engaging in an interactive process to determine whether a reasonable accommodation was available, Defendants terminated her.

The term "reasonable accommodation" may include "part-time or modified work schedules." 42 U.S.C. § 12111(9).  "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] with a disability in need of accommodation." 29 C.F.R. § 1630.2(o)(3).  "This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations."  Id.  In turn, "both parties

have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997). Whether Plaintiff's requested accommodations were, in fact, reasonable is a factual question premature for this stage of the proceedings. Accordingly, the Court declines to dismiss Plaintiff's ADA and PHRA claims.[4]

**B.      Whether Plaintiff has Stated a Valid Claim under the FMLA**

The Family and Medical Leave Act ("FMLA") entitles "employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). The FMLA contains two distinct types of rights. Dogmanits v. Capital Blue Cross, 413 F. Supp. 2d 452, 462 (E.D. Pa. 2005). The first, known as prescriptive or substantive rights, entitles eligible employees to take up to twelve weeks of unpaid leave for a serious health condition and to reinstatement upon their return. 29 U.S.C. § 2612(a)(1), 2614(a)(1). The second, known as proscriptive rights, prohibits discrimination against those individuals exercising their prescriptive rights. Dogmanits, 413 F. Supp. 2d at 462. Plaintiff contends that Defendants violated both her substantive and proscriptive rights. The Court will address both sets of allegations in turn.

**1.      Prescriptive/Substantive Rights – Interference**

The FMLA makes it unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided under the statute. 29 U.S.C. § 2615(a)(1). "In order to assert a claim of interference, an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from

---

[4] In Plaintiff's Response, she also argues that Defendants retaliated against her in violation of the ADA by terminating her for engaging in the protected activity of requesting a reasonable accommodation. Nowhere in the Amended Complaint does Plaintiff assert a claim for ADA retaliation. As such, the Court will not consider this argument.

obtaining those benefits." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 401 (3d Cir.

2007) (citing Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005)). As the Third

Circuit has explained, "[a]n interference action is not about discrimination, it is only about

whether the employer provided the employee with the entitlements guaranteed by the FMLA."

Callison, 430 F.3d at 120; Atchison v. Sears, 666 F. Supp. 2d 477, 488 (E.D. Pa. 2009).

Plaintiff alleges that Defendants interfered with her right to take FMLA leave by (1)

taking unwarranted disciplinary action against Plaintiff the week she notified Defendant

Attleboro of her intention to take leave; (2) failing to timely provide her with the appropriate

leave-related paperwork; (3) refusing to grant her reasonable accommodations in the form of a

reduced schedule or hourly breaks upon her return from leave; and (4) terminating her during her

last week of leave. Defendants contend that Plaintiff's interference claim should fail because the

FMLA does not require employers to restore an employee to a former position if the employee

cannot perform the essential functions of that position. (Defs.' Mot. Dismiss 4.)[5] They further

assert that an employer need not offer reasonable accommodations to an employee with a

continuing medical condition to facilitate her return to work. (Id.)

"When an employee returns from FMLA leave, she 'is entitled to be returned to the same

---

[5] In support of Defendants' argument that Plaintiff was not entitled to FMLA
reinstatement because she required a modified work schedule for an indefinite period,
Defendants have submitted a note from Plaintiff's doctor stating only that she could return to
work on February 12, 2009 at four hours per day. (Defs.' Mot. Dismiss, Ex. B.) Plaintiff
challenges the submission of this evidence as outside the pleadings, and therefore improper under
Rule 12(b)(6). Alternatively, Plaintiff asks to submit additional evidence showing that the
company did not engage in an interactive process before terminating her. The Court declines to
consider outside evidence at this stage of the proceedings, where Plaintiff's allegations, taken as
true, are sufficient for the Court to make a determination as to the validity of Plaintiff's FMLA
claim.

position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment.'" Fogleman v. Greater Hazleton Health Alliance, 122 Fed. Appx. 581, 587 (3d Cir. 2004) (quoting 29 C.F.R. § 825.214(a)). However, "if the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA." Id. (citing 29 C.F.R. § 825.214(b)). Likewise, the FMLA does not require "an employer to provide a reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the conclusion of his medical leave." Fogleman, 122 Fed. Appx. at 587 (quoting Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 384 (3d Cir. 2002)). "Rather, the employee must be able to perform the essential functions of the job without accommodation." Fogleman, 122 Fed. Appx. at 587.

In light of these limitations to FMLA coverage, "[a]n employer is free to terminate an employee who is unable to return to work at the expiration of the leave period, and may do so during the leave period, if it becomes apparent that the employee will not be able to resume her duties." Anderson v. DSM N.V., 589 F. Supp. 2d 528, 537 (D.N.J. 2008) (citing Katekovich v. Team Rent A Car of Pittsburgh, Inc., 36 Fed. Appx. 688, 690 (3d Cir. 2002)); Rinehimer, 292 F.3d at 384. "Thus, the critical question is whether [Plaintiff] required an accommodation to perform the essential functions of her job (or an equivalent job). If so, then [Defendants] had no duty to restore her to her position after she took FMLA leave." Conroy v. Twp. of Lower Merion, 77 Fed. Appx. 556, 559 (3d Cir. 2003).

Here, Plaintiff concedes that she was unable to return to work, at least temporarily,

without accommodation after her twelve weeks of FMLA leave ended. Instead, she requested a part-time schedule, hourly breaks, or extended unpaid leave. While such a refusal to accommodate her ankle condition may be a violation of the ADA, these requests are fatal to Plaintiff's FMLA interference claim. Because Plaintiff has conceded that she could not return to her previous full-time position without some form of accommodation, she was not entitled to reinstatement pursuant to the FMLA. See Baker v. Hunter Douglas Inc., 270 Fed. Appx. 159, 162 (3d Cir. 2008) (affirming district court's grant of summary judgment for defendant "[b]ecause the FMLA does not provide for a reasonable accommodation and the record indicates that [plaintiff] was unable to return to work full-time at the conclusion of her FMLA leave"); Johnson v. Cmty. Coll. of Allegheny Cnty., 566 F. Supp. 2d 405, 450 (W.D. Pa. 2008) (granting summary judgment in favor of defendant where plaintiff could not return to full-time work, and stating that "[i]t is well settled that under the FMLA an employee must be able to return to her original position without accommodation after her medical leave"); Chapman v. UPMC Health Sys., 516 F. Supp. 2d 506, 521-22 (W.D. Pa. 2007) (finding plaintiff was unable to perform essential function of position where she could not work full-time at a full-time position).[6]

---

[6] Plaintiff cites Throneberry v. McGehee Desha Cnty. Hosp., 403 F.3d 972, 980 (8th Cir. 2005) for the proposition that "every discharge of an employee while he is on leave interferes with his rights." (Pl.'s Resp. Opp'n 20.) The plaintiff in Throneberry, however, alleged FMLA interference because her termination prevented her from taking all 12 weeks of leave. Here, although Plaintiff was notified of her termination during her last week of leave, the termination did not take effect until her leave was over, such that she suffered no interference with her ability to take the full amount of leave to which she was entitled.

Moreover, the court went on to emphasize that an employee "enjoys no greater rights while on FMLA leave than had the employee not taken FMLA leave." Id. Thus, once Plaintiff indicated that she was unable to return to work without accommodation, her employer was not obligated to wait until Plaintiff's FMLA leave ended before deciding to discharge her when her leave period concluded.

Therefore, the Court dismisses Plaintiff's interference claim to the extent it alleges that Defendants denied her reasonable accommodation or terminated her during her last week of leave.

Defendants have not, however, challenged Plaintiff's allegations of interference via Defendants' issuance of unwarranted discipline or delay in providing FMLA paperwork. An employee can allege denial of benefits by showing her employer "chilled" her desire to take FMLA leave. Gibson v. Lafayette Manor, Inc., No. CIV.A.05-1082, 2007 WL 951473, at *17 (W.D. Pa. Mar. 27, 2007) (citing Williams v. Shenango, Inc., 986 F. Supp. 309, 320-21 (W.D. Pa. 1997); Shtab v. Greate Bay Hotel and Casino, Inc., 173 F. Supp. 2d 255, 267-68 (D.N.J. 2001)). Whether Defendants' actions rise to the level of prejudice necessary to chill Plaintiff's desire to take leave is a question of fact the Court will not consider without further briefing. Accordingly, the Court declines to dismiss the FMLA claim to the extent it relies upon these allegations.

### 2.     Proscriptive Rights – Retaliation

The FMLA also makes it unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). This provision prohibits retaliation by an employer for the employee's exercise of rights under the FMLA. As with other retaliation claims, the Court utilizes the burden-shifting framework set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Sherrod v. Philadelphia Gas Works, 209 F. Supp. 2d 443, 451 (E.D. Pa. 2002). Thus, to state a prima facie case for retaliation, a plaintiff must allege that (1) she invoked her right to FMLA benefits; (2) she suffered a "materially adverse" employment

action; and (3) the adverse employment decision was causally related to the invocation of her

rights. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004)); Hare v.

Potter, 220 Fed. Appx. 120, 127-28 (3d Cir. 2007).[7]

### a.    Termination

Plaintiff first alleges that Defendants terminated her in retaliation for her exercise of

FMLA rights.  In support, she argues that the temporal proximity of her leave and her termination

gives rise to an inference of a causal connection between her protected activity and the adverse

employment action.  (Pl.'s Resp. Opp'n 19.)  Defendants contend that because Plaintiff could not

return to her pre-leave job without accommodation – thus rendering her ineligible for statutory

reinstatement under the FMLA – her termination does not constitute a materially adverse

decision necessary for a prima facie claim.  (Defs.' Mot. Dismiss 5-6.)

An action is "materially adverse" if it would "dissuade[] a reasonable worker" from

exercising a right under the FMLA.  DiCampli, 257 Fed. Appx. at 501 (citing Moore v. City of

Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006); Burlington, 548 U.S. 53).  Defendants cite a

number of cases holding that a termination is not "adverse" for purposes of an FMLA retaliation

claim where the plaintiff could not return to work without accommodation and, as such, had no

---

[7] Hare adopted the Supreme Court's revised definition of "adverse employment action"
for the purposes of Title VII retaliation claims set forth in Burlington N. & Santa Fe Ry. Co. v.
White, 548 U.S. 53 (2006).  "Prior to Burlington Northern, this Court defined an adverse
employment action as one that 'alter[ed] the employee's compensation, terms, conditions, or
privileges of employment, deprive[d] him or her of employment opportunities, or adversely
affect[ed] his or her status as an employee' . . . . The new standard 'protects an employee from a
wider range of conduct' than the old one."  Hare, 220 Fed. Appx. at 127 (quoting Robinson v.
City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997); Phelan v. Cook Cnty., 463 F.3d 773, 781
n.3 (7th Cir. 2006)).  The Third Circuit has since applied this revised standard to retaliation
claims under the FMLA.  See DiCampli v. Korman Cmtys., 257 Fed. Appx. 497, 501 (3d Cir.
2007).

prescriptive right to reinstatement.  See Alifano v. Merck & Co., Inc., 175 F. Supp. 2d 792, 795

(E.D. Pa.. 2001); Dogmanits, 413 F. Supp. 2d at 464 ("to show that termination was adverse,

Plaintiff needs to present evidence indicating that she could have performed her job duties at the

time of her termination") (citing Alifano); Gibson, 2007 WL 951473, at *19.  The Court chooses

not to follow Alifano's line of reasoning, however, as it appears to conflate the FMLA's

prescriptive right to restatement and proscriptive right against retaliation.  Castellani v. Bucks

Cnty. Municipality, No. CIV.A.07-1198, 2008 WL 3984064, at *5-6 (E.D. Pa. Aug. 27, 2008);

Chapman, 516 F. Supp. 2d at 524 n.4 (W.D. Pa. 2007); Keim v. Nat'l R.R. Passenger Corp., No.

CIV.A.05-4338, 2007 WL 2155656, at *7 n.6 (E.D. Pa. July 26, 2007).  As one court has noted:

> Certainly, once an employee exceeds the duration of her protected leave, the employer is
> not obligated by FMLA to keep open the position or to reinstate the employee upon her
> return.  However, the focus in retaliation cases is on the subjective motive of the
> employer.  That [the defendant] may have had a legitimate basis for its employment
> decision is not a complete defense to a "proscriptive" FMLA claim.  While [the
> defendant] may generally be justified in terminating Plaintiff because she remained absent
> at the end of her FMLA leave, this does not necessarily preclude the finding that unlawful
> considerations may have nevertheless played a determinative role in the particular
> decision at issue.

Keim, 2007 WL 2155656, at *6 (citations omitted).  As Keim further explained, the authority

upon which Alifano relies does not question that the plaintiff's termination was an adverse

action.  Id. at *7 (citing Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 166 (1st Cir. 1998)

("There is no dispute as to the second element [of the prima facie case]: [plaintiff]'s termination

was an adverse action.")).  Rather, the court granted summary judgment for the employer because

plaintiff was unable to demonstrate pretext.  Id.  Following the logic of Keim, the Court finds

that Plaintiff's termination could still constitute an adverse action under the FMLA even if she

was not entitled to reinstatement under the FMLA.  Accordingly, the Court declines to dismiss

Plaintiff's FMLA retaliation claim.[8]

**b.    Discipline**

Plaintiff also alleges that Defendants' issuance of unwarranted discipline in a manner

inconsistent with Attleboro's disciplinary scheme was a retaliatory act.  In response, Defendants

contend that the disciplinary notice Plaintiff received for placing speed restrictors on a patient's

chair does not constitute an "adverse action."  (Defs.' Mot. Dismiss 6.)

"Whether an action is materially adverse 'often depends on a constellation of surrounding

circumstances, expectations, and relationships which are not fully captured by a simple recitation

of the words used or the physical acts performed.'"  Hare, 220 Fed. Appx. at 128 (quoting

Burlington, 548 U.S. at 68).  "In evaluating whether actions are materially adverse, [the Court]

must remain mindful that 'it is important to separate significant from trivial harms' because '[a]n

employee's decision to [engage in protected conduct] cannot immunize that employee from those

petty slights or minor annoyances that often take place at work and that all employees

experience.'"  Harley v. Geithner, No. CIV.A.07-3559, 2010 WL 3906642, at *14 (D.N.J. Sept.

29, 2010) (quoting Moore, 461 F.3d at 346).  With these considerations in mind, courts have

found retaliatory discipline to be a "materially adverse" action that could dissuade a reasonable

worker from exercising her rights under the FMLA.  See, e.g., Bell v. City of Philadelphia, 275

Fed. Appx. 157, 161 (3d Cir. 2008) (finding plaintiff's claims for retaliatory discipline and

---

[8]  Defendants also move to strike Plaintiff's claims for physical and emotional injuries, loss of self-esteem, personal humiliation, and loss of enjoyment of life under the ADA, PHRA, FMLA, and ERISA for failure to allege any facts supporting such damages.  (Defs.' Mot. Dismiss 9.)  Given that Plaintiff has set forth a valid a prima facie case under the ADA, PHRA, and FMLA, the Court declines to consider Plaintiff's requested relief until the parties have fully developed the factual record.  The Court will consider Plaintiff's requested relief under ERISA in conjunction with Defendants' other challenges to the ERISA claim.

termination met "materially adverse" threshold); Harley, 2010 WL 3906642, at *14 (noting

courts' acceptance of disproportionately heavy discipline as satisfying Burlington Northern

standard) (citing Moore, 461 F.3d at 346).[9]   Accordingly, the Court finds Plaintiff's allegations of

unwarranted discipline sufficient to state a claim for FMLA retaliation.

### C.      Whether Plaintiff has Stated Valid Claims Under ERISA and COBRA

Defendants next assert that the Court should dismiss Plaintiff's ERISA and COBRA

claims (Counts VI and VII ) for failure to allege her damages with specificity.   Should the Court

decline to dismiss these claims in their entirety, Defendants contend that Plaintiff's claim for

compensatory, liquidated, and punitive damages under ERISA should be stricken because the

statute does not contemplate such relief.

### 1.      ERISA

Section 510 of ERISA prohibits purposeful interference by an employer with any right to

which an employee may be entitled under a pension benefit plan.   29 U.S.C. § 1140.   According

to Plaintiff, Defendants violated this provision by discharging and otherwise discriminating

against her for the purpose of interfering with her attainment of benefits to which she might have

become entitled.   (Am. Compl. ¶ 86.)   Specifically, Plaintiff alleges that Defendant Mitchell

intentionally interfered with her ERISA rights by refusing to submit Plaintiff's short-term

disability forms in a timely manner, failing to supply correct salary data to the short-term

---

[9]   Notably, under the pre-Burlington standard, courts found such discipline insufficient to
state a claim for retaliation, as it failed to affect the compensation, terms, conditions, or
privileges of employment.   See, e.g., Sconfienza v. Verizon Pa. Inc., 307 Fed. Appx. 619, 621-22
(3d Cir. 2008) (finding formal written warning in progressive discipline scheme did not alter
conditions of employment where it did not affect compensation, ability to receive transfer, or
promotion).

disability carrier, terminating Plaintiff, and failing to supply her with required notices under

COBRA and ARRA.  (Id. ¶ 87.)  Plaintiff's ERISA interference claim alleges wage loss and

emotional distress, and requests "compensatory, liquidated, and punitive damages . . . plus costs

of this action, reimbursement of back pay with interest, front pay, attorney's fees, and such other

relief as the Court may deem just, proper, and appropriate in the circumstances of this case."  (Id.

¶ 90; Prayer for Relief.)

Defendants contend that Plaintiff's failure to specifically allege the type and amount of

injury suffered (e.g. the correct value of her salary and the amount lost as a result of Defendants'

misinformation) renders her claim insufficient under the standards of Rule 12(b)(6).  (Defs.' Mot.

Dismiss 8-9.)  In response, Plaintiff argues that she need only allege intent to interfere, not

whether such interference was successful and the amount of the resulting loss.  (Pl.'s Resp.

Opp'n 25.)

To recover under section 510, a plaintiff need only prove the defendant's intent to

interfere with her attainment of benefits, "even if the intended results are not actualized and

regardless of whether the participant would have actually received the benefits absent the

interference."  Meacham v. Bell Tel. Labs. Inc., No. CIV.A.87-3752, 1990 WL 299805, at *10

(D.N.J. Feb. 15, 1990) (quoting Gavalik v. Cont'l Can Co., 812 F.2d 834, 852 (3d. Cir. 1987));

see also Gavalik, 812 F.2d at 852 n.32 (noting that ERISA's legislative history envisions a

"preventive, as well as corrective, purpose[]" for section 510) (citations omitted).  In light of

section 510's emphasis on intent versus actualized loss, the Court declines to dismiss Plaintiff's

ERISA claim at this stage of the proceedings for failure to specify monetary damages.

Alternatively, Defendants assert that Plaintiff's claims for extra-contractual or punitive

damages under ERISA and COBRA should be stricken because ERISA does not permit their recovery.  (Defs.' Mot. Dismiss 9-10.)  Plaintiff concedes that she cannot recover punitive damages for her ERISA and COBRA claims, but maintains that her other requests for relief are viable.  (Pl.'s Resp. Opp'n 22.)

Section 502(a) of ERISA offers the exclusive enforcement scheme for violations of section 510.  See, e.g., Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 144 (1990); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987); Eichorn v. AT&T Corp., 484 F.3d 644, 651 (3d Cir. 2007).  Subsection 502(a)(1)(B) provides recovery where a defendant has failed to comply with the terms of a plan, allowing plaintiffs to enforce their rights or recover benefits due to them under the plan.  Cox v. Keystone Carbon Co., 861 F.2d 390, 392 (3d Cir. 1988) (quoting § 502(a)(1)(B)); Eichorn, 484 F.3d at 653.  In contrast, subsection 502(a)(3) provides the sole relief for plaintiffs alleging a defendant's interference with their ability to become eligible for future benefits under the plan.  Eichorn, 484 F.3d at 653.  Under subsection 502(a)(3), a plaintiff may bring an action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other equitable relief."  Cox, 861 F.2d at 392.  Plaintiff does not specify under which subsection she brings her claim.  In her Response, she argues only as to the relief permitted under subsection (a)(3).  Accordingly, the Court will proceed only with an analysis of remedies available under § 502(a)(3).

A plaintiff seeking relief under § 502(a)(3) must tie that request to a form of relief typically available in equity, such as "injunction, mandamus, and restitution."  Eichorn, at 654-55 (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993)).  As Defendants correctly suggest, such remedies do not include Plaintiff's claim for legal relief in the form of monetary

damages.  Id. (compensatory damages not permitted under § 502(a)(3)); Cureton v. Verizon Serv.

Corp., No. CIV.A.05-00213, 2005 WL 1785302, at *5 (E.D. Pa. July 25, 2005) (punitive

damages not permitted for § 510 violation) (citing Mass. Mut. Life Ins. Co. v. Russell, 473 U.S.

134, 144-48 (1985)).  Accordingly, the Court will dismiss Plaintiff's claims for punitive,

liquidated, and compensatory damages (including those for emotional distress).[10]

 "This is not to say that an ERISA plaintiff's demand for money necessarily requires the

conclusion that the relief sought is not 'equitable' within the meaning of the statute." Eichorn,

484 F.3d at 655 n.6.  Although only available in "limited circumstances," Eichorn notes that

"some forms of equitable relief – such as constructive trusts, equitable liens, or accounting for

the profits derived from wrongly held property – include the payment of money." Id. (citing

Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213-14 & n.2 (2002)).  On this

basis, the Court declines to dismiss Plaintiff's ERISA claim in its entirety solely because of

Plaintiff's improper request for punitive and compensatory damages.  Plaintiff has also requested

back pay, front pay, and other remedies the Court may deem appropriate.  Defendants have failed

to challenge these damages beyond their broader objection to the remedies discussed above.

"[W]hether a particular form of relief is legal or equitable in nature is largely dependent on the

facts of a particular case." Sessions v. Owens-Illinois, Inc., No. CIV.A.07-1669, 2008 WL

---

[10]  Plaintiff cites a number of cases she characterizes as having granted non-equitable
relief to plaintiffs claiming ERISA interference.  The only Third Circuit case Plaintiff references,
however, does no such thing.  See Cox, 861 F.2d 390.  In Cox, the court denied plaintiff's
request for a jury trial based on its finding that the remedies available in actions under section
502(a)(3) are "exclusively equitable."  Id. at 393.  The Court instead chose to remand the
plaintiff's section 502(a)(1)(b) claim to determine whether that claim was legal in nature and
eligible for a jury trial.  As discussed above, Plaintiff has given no indication that she is
proceeding under 502(a)(1)(b).

4821755, at *6 (M.D. Pa. Nov. 4, 2008) (declining to rule on plaintiff's request for past-due benefits before summary judgment stage); see also Pell v. E.I. de Nemours & Co. Inc., 539 F.3d 292, 307 (3d Cir. 2008) (granting injunction to calculate plaintiff's future pension payments using an earlier adjusted service date because the remedy is "forward-looking and entitles [plaintiff] to an amount of money that cannot be calculated with specificity (since it is unknown how long he will survive and be entitled to benefits)").  Given the fact-intensive nature of the Court's damages inquiry, the Court declines to evaluate Plaintiff's ERISA claim before the parties have developed a factual record reflecting the exact contours of Plaintiff's requested relief.

### 2.    COBRA

Defendants also move to strike Plaintiff's request for compensatory and punitive damages stemming from Defendants' failure to timely provide Plaintiff with appropriate COBRA notices. See 29 U.S.C. § 1132(c)(1) and 29 U.S.C. § 1166.[11]  Pursuant to 29 U.S.C. § 1132(c)(1), those employers in violation of ERISA's reporting and disclosure provisions are personally liable to a plaintiff-participant for up to $110 a day from the date of such violation and for any other relief the court deems proper.  Id.; see also 29 C.F.R. § 2575.502c-1 (increasing maximum civil penalty from $100 to $110 per day for violations occurring after July 29, 1997).  "Both the decision to award penalties and the amount of any award are within the discretion of the trial court."  Lloynd v. Hanover Foods Corp., 72 F. Supp. 2d 469, 479-80 (D. Del. 1999) (citing 29 U.S.C. § 1132(c)(1)); Boyadjian v. CIGNA Cos., 973 F. Supp. 500, 505-07 (D.N.J. 1997).  Courts in the

---

[11]  As discussed above, Plaintiff has conceded that she cannot recover punitive damages under ERISA or COBRA.  Accordingly, the Court will only consider the viability of her request for compensatory damages.

Third Circuit have "imposed a wide range of penalties under the statute," including reimbursement of unpaid medical expenses. Lloynd, 72 F. Supp. 2d at 480. Given the discretionary nature of the remedial scheme of § 1166, the Court declines to dismiss Plaintiff's claims for compensatory damages at this time.

### D.    Individual Liability of Defendant Susan Mitchell

Plaintiff names Susan Mitchell, director of Human Resources for Attleboro, individually as a Defendant to Plaintiff's FMLA and ERISA claims. In the introductory portion of the Motion to Dismiss, Defendants ask the Court to dismiss Defendant Mitchell from the case, but then fail to offer any further argument in support of this request. In response, Plaintiff offers a wealth of legal authority against Defendant Mitchell's dismissal. Given that both parties have had the opportunity to fully address this issue, the Court will consider Defendants' request, albeit briefly.

The FMLA defines an "employer" as, inter alia, "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)( I ). Such language plainly evinces an intent to provide for individual liability. Spagnoli v. Brown & Brown Metro, Inc., No. CIV.A.06-414, 2007 WL 2362602, at *16 (D.N.J. Aug. 15, 2007); Kilvitis v. Cnty. of Luzerne, 52 F. Supp. 2d 403, 412 (M.D. Pa. 1999). Courts have held that such individual liability attaches under the FMLA when an employee has "exercised control" over a plaintiff's FMLA leave or acts on behalf of the employer. Gude v. Rockford Ctr. Inc., 52 F. Supp. 2d 403, 684 (D. Del. 2010) (citing Spagnoli, 2007 WL 2362602); Hewett v. Willingboro Bd. of Educ., 421 F. Supp. 2d 814, 817-18 n.4 (D.N.J. 2006)). Here, Plaintiff alleges that Defendant Mitchell was "in whole or in part responsible for the decision to terminate Plaintiff" and "acted in the interest of her employer Attleboro with regard to the actions

she took concerning Plaintiff." (Am. Compl. ¶ 81.) Thus, the Court sees no reason to dismiss Defendant Mitchell from Plaintiff's FMLA claim at this stage of litigation.

Likewise, ERISA makes it unlawful for "any person" – as opposed to only an employer – to discipline, discharge, or otherwise discriminate against a participant for exercising rights to which she is entitled under an employee benefit plan. 29 U.S.C. § 1140. As defined by the statute, the term "person" includes "an individual." 29 U.S.C. § 1002(9). Accordingly, the Court finds Plaintiff has properly alleged that Defendant Mitchell is an individual intending to interfere with Plaintiff's rights in violation of section 510.

In light of Defendants' lack of supporting arguments and the Court's brief survey of pertinent Third Circuit jurisprudence, the Court declines to dismiss Defendant Mitchell from the case at this time. This holding does not, however, foreclose Defendants from moving for Ms. Mitchell's dismissal in the future.

## IV.    CONCLUSION

Based on the foregoing, the Court denies Defendants' Motion to Dismiss Plaintiff's ADA and PHRA claims for disability discrimination and failure to accommodate. The Court also declines to dismiss Plaintiff's FMLA retaliation claim. Similarly, the Court will allow Plaintiff's FMLA interference claim to proceed to the extent it relies upon Defendants' unwarranted issuance of discipline and failure to timely submit FMLA paperwork, as Defendants did not challenge these aspects of the claim. However, the Court grants dismissal of Plaintiff's interference claim with respect to her termination and Defendants' refusal to provide her with reasonable accommodation. Additionally, the Court strikes Plaintiff's claim for punitive and compensatory damages under ERISA and punitive damages under COBRA, but declines to

dismiss either claim in its entirety.  Finally, the Court declines to dismiss Defendant Mitchell from the case.

An appropriate Order follows.